IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT DALE PEEK | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | |
| | § | NO. 3-06-CV-1970-M |
| NATHANIEL QUARTERMAN, Director | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division | § | |
| | § | |
| Respondent. | § | |

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Petitioner Robert Dale Peek, appearing *pro se*, has filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the application should be denied.

I.

A jury convicted petitioner of knowingly and intentionally causing serious bodily injury to his four-month old daughter, Serena.[1] Punishment was assessed by the trial court at 15 years confinement. His conviction and sentence were affirmed on direct appeal. *Peek v. State*, No. 08-00-00158-CR, 2001 WL 1169922 (Tex. App.--El Paso, Oct. 4, 2001), *aff'd*, 106 S.W.3d 72 (Tex. Crim. App. 2003). Petitioner also filed an application for state post-conviction relief. The application was denied without written order. *Ex parte Peek*, No. 65,682-01 (Tex. Crim. App. Oct. 11, 2006). Petitioner then filed this action in federal district court.

---

[1] Petitioner's wife, Rosana Peek, was charged with recklessly causing serious bodily injury to her daughter. The couple were tried together and both were convicted of the offenses alleged in their respective indictments. Upon conviction, the trial court sentenced Rosana to one-year in a state jail facility.

-1-

II.

Petitioner raises two broad issues in multiple grounds for relief. Succinctly stated, petitioner contends that: (1) he received ineffective assistance of counsel at trial; and (2) the prosecutor made an improper jury argument.

A.

The standard of review in federal habeas cases is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* Pub.L. 104-132, 110 Stat. 1214 (1996). Where, as here, a state court has already rejected the claims raised by petitioner, a federal court may grant habeas relief only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). An unreasonable application of clearly established federal law is one in which "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*, 120 S.Ct. at 1523; *see also Pondexter v. Dretke*, 346 F.3d 142, 145-46 (5th Cir. 2003), *cert. denied*, 124 S.Ct. 2160 (2004). Stated differently, "a federal court may grant relief when a state court has misapplied a 'governing legal

principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003), *quoting Lockyer v. Andrade*, 538 U.S. 63, 76, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003).

With respect to mixed questions of fact and law, a federal habeas court must give deference to state court findings unless they are "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir.), *cert. denied*, 121 S.Ct. 508 (2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

B.

Petitioner contends that he received ineffective assistance of counsel because his attorney: (1) failed to present material evidence to the jury; (2) did not interview or subpoena potential witnesses; and (3) failed to file proper motions, make proper objections, or consult with him before and during trial.

1.

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *Id.*, 104 S.Ct. at 2064. The Fifth Circuit has described that standard as "requiring

that counsel research relevant facts and law, or make an informed decision that certain avenues will not be fruitful." *United States v. Herrera*, 412 F.3d 577, 580 (5th Cir. 2005), *quoting United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997). Second, the petitioner must prove that he was prejudiced by his attorney's substandard performance. *Strickland*, 104 S.Ct. at 2067. Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068; *see also Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993) (habeas petitioner must show that trial result was unreliable or proceeding fundamentally unfair due to deficient performance of counsel).

2.

Petitioner was charged with injuring Serena by squeezing her with his hands. (SF-II at 7). In a separate indictment, Rosana Peek was charged with causing injury to the child by grabbing her with excessive force. (*Id.* at 6). While visiting her parents in Baytown, Texas during the fall of 1996, Rosana took Serena to San Jacinto Methodist Hospital for treatment of a fever and a sore mouth. (*Id.* at 150-52, 170). The family returned to the Dallas area several weeks later. When Serena's condition failed to improve, petitioner and his wife sought medical treatment for the child at Presbyterian Hospital. (*Id.* at 159, 211). Suspecting that Serena may have been abused, Presbyterian transferred her to Children's Medical Center where a physical examination revealed multiple rib fractures, tears inside her mouth, and bruises on her jaw, chest, left arm, and both legs. (*Id.* at 113-16). Child Protective Services ("CPS") immediately put Serena under protective

surveillance at the hospital and called the police. (*Id.* at 15, 92-93). In a written statement signed by petitioner on November 14, 1996, he admitted injuring Serena:

> I have been told now that Serena has two ribs on her back that have been broken in the past two or three weeks. I am sure that I probably caused these broken ribs to Serena by squeezing her too tight. There have been many times I have squeezed Serena and thought I might be injuring her. I know that I have put bruises on Serena's arm by holding her by the arm. I have a lot of strength and get stronger if I get frustrated or play with Serena. I have burped Serena by wrapping my arm around her back and squeezing her against me. I know I have done this too hard at times and have now quit doing this because of this, and I did not like this burping pattern. Rosana has voiced concern about me being too rough with Serena or squeezing her too hard. I have also felt for a long time that I might be injuring Serena and remember five or six times specifically that I squeezed or grabbed Serena too hard. Her ribs had to have been broken one of those times.

(St. Exh. 4).

At trial, petitioner and his wife denied intending to hurt their daughter and suggested that the injuries occurred while Serena was visiting her grandparents or at the hospital in Baytown. (SF-II at 192, 196, 198, 221-22, 230-36). Although several character witnesses testified on behalf of petitioner, defense counsel offered only one exhibit into evidence. Among the exhibits not presented to jury were: (1) records showing that petitioner was at work in Dallas on November 10, 1996, when his wife and daughter were in Baytown; (2) family photographs; (3) a CPS recommendation that Serena be temporarily placed with a family member; (4) a certificate showing that petitioner successfully completed a Volunteers of America Nurturing Program; (5) a psychological evaluation performed by Dr. David M. O'Brien; (6) a letter from petitioner's former landlord, Jeanette Alexander, describing petitioner and his wife as "a loving and caring couple;" and (7) medical records from San Jacinto Methodist Hospital and Children's Medical Center. Petitioner now claims that his attorney was ineffective for failing to offer these exhibits.

This claim was first raised in the middle of trial when petitioner and his wife advised the court that they wanted to discharge their attorney.[2] When asked to articulate their complaints outside the presence of the jury, petitioner testified that defense counsel was "suppressing evidence," including his employment records, family photographs, a letter from CPS, and various radiology reports. (*See* SF-III at 3-18; Def. Exhs. 1-7). Counsel explained that the employment records were cumulative of uncontroverted evidence already before the jury regarding the date petitioner took his family to Baytown. (SF-III at 12). The CPS letter was later offered into evidence, but excluded by the trial court on hearsay grounds. (*Id.* at 61). With respect to the x-ray reports, the prosecutor represented that those documents were included in the medical records introduced into evidence by the state. (*Id.* at 19-20). No explanation was offered by defense counsel for not offering the family photographs. After considering the arguments, the judge gave the petitioner and his wife a choice-- either continue the trial with their current attorney or represent themselves. (*Id.* at 20-22). Petitioner and his wife elected to proceed with counsel. (*Id.* at 23-24).

At the conclusion of the trial, after both sides rested and closed, defense counsel orally moved to reopen the evidence in order to introduce additional records from San Jacinto Methodist Hospital which showed that Serena had an oral ulcer at the time of her admission, had "inflammation of lower gums," and had a negative chest x-ray. The trial court denied the motion in chambers, but later explained his reasons for not allowing petitioner to introduce this evidence:

> No one disputes the trip to the hospital in Baytown. The medical
> records don't reference the broken ribs. So I don't really believe that
> the medical records are relevant.

---

[2] Petitioner and his wife were jointly represented at trial by Gary Shields. At no time did petitioner complain that this joint representation created a conflict of interest. Nor does petitioner raise such a claim on federal habeas review.

> In essence, the medical records would just bolster the testimony concerning the hospital trip, and that's undisputed. It doesn't shed any light on whether or not the Defendants committed the offense charged. If I allow the defense to reopen, the State certainly should be allowed to call rebuttal witnesses. That will cause a delay. The Court believes it's an unreasonable delay under the circumstances.

(SF-IV at 51).

Following their convictions, petitioner and his wife, represented by a different attorney, filed a motion for new trial. In addition to reurging their complaint that trial counsel failed to timely offer petitioner's employment records and records from San Jacinto Methodist Hospital, they sought a new trial based on counsel's failure to introduce certificates showing successful completion of a nurturing course, the results of a psychological evaluation performed by Dr. O'Brien, and a letter from their former landlord. (SF-VI at 4-13; Def. Exhs. 8-15). The trial court denied the motion without explanation. On direct appeal, the state appellate court addressed only petitioner's claim related to his employment records. The appeals court concluded that counsel's failure to offer these records into evidence "was part of a strategic design, in that . . . the work records buttressed uncontroverted evidence." *Peek*, 2001 WL 1169922 at *17.[3] The other aspects of petitioner's ineffective assistance of counsel claim were considered and rejected on state collateral review. (*See* St. Hab. Tr. at 94, ¶ 7).

In order to obtain federal habeas relief, petitioner must rebut the state court findings by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Grant v. Dretke*, 151 Fed.Appx. 344, 345, 2005 WL 2746785 at *1 (5th Cir. Oct. 25, 2005), *cert. denied*, 126 S.Ct. 2358 (2006), *citing*

---

[3] Although the Texas Court of Criminal Appeals granted a petition for discretionary review, it did so only to address the narrow issue of whether the court of appeals applied the correct legal standard in analyzing petitioner's claim that the trial court improperly denied his motion to reopen. *See Peek v. State*, 106 S.W.3d 72, 73 (Tex. Crim. App. 2003). Because petitioner does not directly challenge that ruling in his federal writ, the Court of Criminal Appeals decision has no bearing on the disposition of this case.

*Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001) (presumption of correctness applies to both explicit and implicit findings necessary to state court's determination of mixed questions of law and fact). Petitioner has failed to meet this heavy burden. With respect to records showing that petitioner was at work in Dallas on November 10, 1996, that evidence was already before the jury. (SF-II at 42-44, 206-07). The family photographs, consisting largely of pictures of petitioner playing with Serena, are not probative of whether he physically harmed his daughter.[4] By contrast, photographs introduced by the state depicting injuries to the child were highly probative and therefore admissible. (*See* SF-II at 99-101; St. Exh. 5). Similarly, the CPS recommendation that Serena be temporarily placed with a family member and the certificate showing that petitioner successfully completed a Volunteers of America Nurturing Program in January 1997, nearly three months after Serena was injured, have no bearing on guilt or innocence. Petitioner also overlooks the fact that his attorney offered the CPS letter into evidence, only to have the trial court exclude it on hearsay grounds. (SF-III at 61; Def. Exh. 7). The letter from Jeanette Alexander, petitioner's former landlord, also would have been excluded as hearsay had it been offered as evidence. Moreover, Alexander's letter was cumulative of other evidence presented at trial, including the testimony of her daughter, Melanie Mayhall, who described petitioner as a loving and caring father who never lost his temper and was very patient with children. (SF-III at 35-37). The psychological evaluation performed by Dr. O'Brien contains inadmissible hearsay and is inconclusive at best. Because Dr. O'Brien did not have an opportunity to directly observe petitioner's parenting skills, he concluded that "a definitive assessment is not possible." (*See* Def. Exh. 13).

---

[4] The court notes that some of the more than 100 photographs tendered by petitioner appear to depict a child older than four months who likely is not Serena. Those photos are clearly irrelevant to any issue in the case. Likewise, the photographs of petitioner and his wife training a parakeet are not relevant to whether they inflicted injury to their daughter.

Nor was counsel ineffective for failing to offer records from San Jacinto Methodist Hospital and x-ray reports from Children's Medical Center. As noted by the prosecutor at trial, the x-ray reports from Children's were included in the records introduced into evidence by the state. (*See* SF-III at 19-20; St. Exh. 9). The only relevant record from San Jacinto Methodist Hospital was a radiology report interpreting two chest x-rays taken on November 10, 1996. According to the report, Serena's x-rays were "negative" and her "bony thorax [was] intact." (Def. Exh. 8). At trial, defense counsel questioned Dr. Donna Persaud, the pediatrician who treated Serena upon her admission to Children's Medical Center, about those x-rays:

> Q:   The fact that San Jacinto said the bony thorax is intact, what does that mean to you?
>
> A:   That they said they have an x-ray report where the bony thorax is -- they called it 'intact.'
>
> Q:   Okay. What does 'intact' mean to you?
>
> A:   That they didn't see anything abnormal.
>
> Q:   Okay. And 'Conclusion: Negative chest.' What does that mean to you?
>
> A:   That means that there wasn't any pneumonia and nothing abnormal that they could see on the x-ray.

(SF-II at 138). However, Dr. Persaud previously testified that fresh rib fractures are not easy to detect on chest films and that calluses on a fractured rib may take about a week to develop. (*Id.* at 117). X-rays taken at Children's Medical Center on November 13, 1996 showed that Serena had "[e]xuberant callus formation" on two of her ribs which signified healing fractures. (St. Exh. 9). This evidence led the state appeals court to conclude that admission of the x-rays from San Jacinto Methodist Hospital "probably would not have materially changed" the outcome of the case. *Peek*,

2001 WL 1169922 at *12. In light of the evidence presented at trial, including petitioner's own statement admitting that he probably caused Serena's broken ribs by squeezing her too tight, the court is unable to conclude that petitioner was prejudiced by counsel's failure to offer any of the omitted exhibits into evidence.

3.

Petitioner also criticizes his attorney for not calling several witnesses to testify on his behalf and for failing to file proper motions, make proper objections, and consult with him before and during trial. Other than Dr. O'Brien, petitioner does not identify any of these potential witnesses or proffer the contents of their missing testimony. Without such evidence, the court cannot begin to analyze his claim of ineffective assistance of counsel. *See Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994). Although petitioner believes that Dr. O'Brien could have presented mitigating evidence on punishment, nothing in the record supports such a conclusion. In fact, Dr. O'Brien conceded that he was unable to make a definitive assessment of petitioner's parenting skills. (*See* Def. Exh. 13). This equivocal testimony likely would not have persuaded the court to impose a lesser sentence.

The other instances of ineffective assistance of counsel alleged by petitioner are either conclusory in nature or wholly without merit. In one of his claims, petitioner faults his attorney for not taking issue with his 15-year sentence when the court inquired, "Counsel, do you know of any reason in law to prevent me from sentencing Mr. Peek at this time?" (SF-V at 8). The question posed by the trial court was not an invitation to argue for a less harsh sentence. In fact, the court had not yet assessed punishment when it asked counsel if there was any reason why sentence should not

be pronounced. Rather, the trial judge merely inquired whether there was any legal impediment to the imposition of a sentence. This ground for relief should be overruled.

Petitioner further contends that his attorney should have challenged the validity of his written statement in a motion to suppress. However, the record fails to reveal any legitimate grounds for suppressing this statement. Detective John Setser testified that petitioner was advised of his constitutional rights, including his right to remain silent and his right to counsel, before giving a statement to the police. (SF-II at 23; St. Exh. 3). At no time did Setser threaten petitioner or promise him anything in return for making a statement. (SF-II at 46). Based on this uncontroverted testimony, it would have been futile for counsel to file a motion to suppress.

In his other grounds for relief, petitioner contends that his attorney was ineffective for not requesting an evidentiary hearing, for failing to consult with him before and during trial, and for not presenting further argument after the judge denied his motion to reopen. However, petitioner fails to elaborate on any of these claims. His speculative and conclusory assertions do not merit habeas relief. *See Hereford v. Cockrell*, No. 3-03-CV-0566-D, 2003 WL 21999497 at *7 (N.D. Tex. Aug. 21, 2003), *rec. adopted*, 2003 WL 22387573 (N.D. Tex. Oct. 16, 2003) (citing cases) (habeas petitioner must show how alleged errors and omissions were constitutionally deficient).

C.

Finally, petitioner alleges that he was denied a fair trial because the prosecutor made an improper jury argument.[5] In an attempt to discredit the character witnesses who testified on behalf

---

[5] Respondent argues that this claim is procedurally barred from federal habeas review because it was presented to the Texas Court of Criminal Appeals for the first time in an application for state post-conviction relief. (*See* Resp. Ans. at 14-17). Although a federal court may not consider the merits of a habeas claim if a state court has denied relief due to a procedural default, only procedural rules that are firmly established and regularly followed by state courts can prevent habeas review of a federal constitutional claim. *See Hathorn v. Lovorn*, 457 U.S. 255, 262-63, 102 S.Ct. 2421,

-11-

of petitioner and his wife, the prosecutor remarked:

> And then the other witness, who saw them one time with the child. *But what she didn't know is that Mr. Peek has two children, and both of them have been taken away by C.P.S. Two babies, two kids, both of them taken away. Tells you what kind of parent he is.*

(SF-IV at 44) (emphasis added). The prosecutor went on to express sympathy for Rosana Peek, stating that there is "[n]o telling what the extent of abuse is going on in their home." (*Id.* at 46). By telling the jury that petitioner had another child taken away by CPS and asking them to speculate about abuse in the home, petitioner maintains that the prosecutor knowingly made an improper argument based on matters not contained in the record.

1.

An improper jury argument rarely justifies federal habeas relief. In order to establish a constitutional violation, a petitioner must show that the argument was so prejudicial that it deprived him of a fair trial within the meaning of the due process clause of the Fourteenth Amendment. *See Kirkpatrick v. Blackburn*, 777 F.2d 272, 281 (5th Cir. 1985), *cert. denied*, 106 S.Ct. 2907 (1986). This, in turn, requires proof that "the misconduct is persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks." *See Jones v. Butler*, 864 F.2d 348, 356 (5th Cir. 1988), *cert. denied*, 109 S.Ct. 2090 (1989) (citing cases).

---

2426, 72 L.Ed.2d 824 (1982); *Smith v. Black*, 970 F.2d 1383, 1386 (5th Cir. 1992), *cert. denied*, 115 S.Ct. 151 (1994). Here, the state habeas court refused to consider petitioner's improper jury argument claim because it could have been raised on direct appeal. (*See* St. Hab. Tr. at 94, ¶ 8). While it is true that petitioner could have raised this claim on direct appeal, it is not clear that Texas law precludes its consideration on collateral review. To the contrary, the Texas Court of Criminal Appeals has recognized that "[h]abeas corpus is reserved for those instances in which there is a jurisdictional defect in the trial court which renders the judgment void, or for denials of fundamental or constitutional rights." *Ex parte Sanchez*, 918 S.W.2d 526, 527 (Tex. Crim. App. 1996). Petitioner's improper jury argument claim implicates his right to a fair trial under the Fourteenth Amendment to the United States Constitution. The court therefore considers this claim on the merits.

2.

The court agrees that it was improper for the prosecutor to argue that petitioner had another child taken away by CPS and to ask the jury to speculate about abuse in the home, particularly since no such evidence was introduced at trial. Notwithstanding these improper remarks, petitioner has failed to establish that he was denied a fair trial. Before the lawyers gave their closing arguments, the trial court instructed the jury:

> Now, what's said in final argument is not evidence. The purpose of the argument is to guide the jury to the conclusion that the person giving the argument believes is appropriate based on the evidence. But I want to remind you that you will base your verdict on the evidence. And again, what is said in argument is a reference to the evidence, but is not evidence itself.

(SF-IV at 6-7). This instruction, together with petitioner's admission that he squeezed his daughter "many times" knowing that he might be injuring her, was more than enough to obviate any prejudice resulting from the prosecutor's imprudent remarks. *See Roberts v. Bowersox*, 61 F.Supp.2d 896, 914 (E.D. Mo. 1999) (holding that prosecutor's jury argument did not render trial fundamentally unfair where petitioner confessed to the crime and trial court instructed the jury not to regard statements made by the lawyers during closing argument as evidence). To the extent the prosecutor's argument potentially affected any aspect of this case, it was punishment. However, petitioner elected to have punishment assessed by the trial court, not the jury. At the punishment hearing, the judge told petitioner that he had "no reason to believe at this point that your rights have been terminated to any child other than the child involved in this case." (SF-V at 6). It is therefore apparent that the judge did not consider the extraneous matters referenced by the prosecutor in her closing argument when sentencing petitioner. This ground for relief should be overruled.

## RECOMMENDATION

Petitioner's application for writ of habeas corpus should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party may file written objections to the recommendation within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: April 16, 2007.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE